# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRY KATZ-CRANK a Michigan resident, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00159-TWP-DML |
| | ) | |
| KIMBERLY HASKETT individually and in her official capacity as an investigator for the Indiana Secretary of State, | ) | |
| | ) | |
| | ) | |
| CHARLIE WILLIAMS individually and in his official capacity as an investigator for the Indiana Secretary of State, | ) | |
| | ) | |
| | ) | |
| TODD ROKITA individually and as former Secretary of State for Indiana, | ) | |
| | ) | |
| CARL BRIZZI individually and as former Prosecutor for Marion County, Indiana, | ) | |
| | ) | |
| MARY HUTCHISON individually and as Assistant Prosecutor for Marion County, Indiana, | ) | |
| | ) | |
| | ) | |
| BARBARA CRAWFORD individually and as Former Assistant Prosecutor for Marion County, Indiana, | ) | |
| | ) | |
| | ) | |
| THOMAS TRATHEN individually and as Chief Investigator for Marion County, Indiana, and MARION COUNTY OF INDIANA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON MOTION TO DISMISS AND
## MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on a Motion to Dismiss (Dkt. 23) filed by Defendants

Kimberly Haskett, Charlie Williams, Todd Rokita, Carl Brizzi, Mary Hutchison, and Barbara

Crawford, and a Motion for Judgment on the Pleadings (Dkt. 37) filed by Defendants Thomas

Trathen and Marion County, Indiana. The dispute in this case stems from Plaintiff Sherry Katz-

Crank's ("Katz-Crank") allegations that she was wrongfully investigated by the Defendants for

aiding and abetting the theft of $22 million in cemetery trust assets in Indiana. She alleges the Defendants had her falsely arrested, maliciously prosecuted, as well as subjected to intentional infliction of emotional distress and abuse of process. She has asserted claims under state law and 42 U.S.C. §§ 1983, 1985 and 1986 against all Defendants. Defendants contend that they are absolutely immune as to both federal and state law claims and that certain claims are time barred. For the reasons set forth below, the Motion to Dismiss is **GRANTED**, and the Motion for Judgment on the Pleadings is **GRANTED**.

## I.    BACKGROUND

The following facts are from Katz-Crank's Complaint (Dkt. 1) and are accepted as true for purposes of this Motion to Dismiss and Motion for Judgment on the Pleadings. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). Katz-Crank is an attorney who has practiced law in the State of Michigan since 1987. She graduated from Notre Dame Law School in the top 25% of her class and has maintained a diverse and distinguished legal career. In 2004, she operated her own law firm known as Corporate Legal Counsel in East Lansing, Michigan, and in 2006 she formed a management company for the purpose of providing for the management of trust services to cemeteries. Kimberly Haskett ("Haskett") and Charlie Williams ("Williams") are investigators in the Securities Division of the Secretary of State's Office for Indiana. Todd Rokita ("Rokita") is the former Indiana Secretary of State. Carl Brizzi ("Brizzi") is the former Prosecutor for Marion County, Indiana. Mary Hutchison ("Hutchison") and Barbara Crawford ("Crawford") were deputy prosecutors for Marion County during the relevant time period. Thomas Trathen ("Trathen") is the Chief Investigator for Marion County, Indiana.

**A.    The Smart Transaction**

From approximately 1999 to 2007, Katz-Crank provided legal representation to twenty-eight cemeteries in the State of Michigan (the "Michigan Cemeteries").  In August 2004, the then owner of Michigan Cemeteries, Craig Bush ("Bush"), sold his interest in the Michigan Cemeteries to Clayton Smart ("Smart") of Oklahoma, for approximately $45 million (the "Smart Transaction").  In Michigan, cemeteries are required by law to place in trust a portion of the proceeds from the sale of each cemetery plot for the care and maintenance of the cemetery into the future.  These trusts are generally known as "perpetual care trusts."  Cemeteries in Michigan are also required to place into trust the value of merchandise purchased by cemetery consumers, such as vaults and markers, to ensure that the money is available to purchase the goods at the time they are required.  These trusts are generally known as "merchandise trusts."  Pursuant to Michigan law, a trustee is selected by the cemetery owner to oversee the trust accounts.

At the time of the Smart Transaction, there was over $61 million in both the perpetual care and merchandise trusts for the Michigan Cemeteries. The trustee for the Michigan Cemeteries' trusts was Community Trust and Investment in Indiana ("Community").  The investment advisor for the Michigan Cemeteries' trust was Mark Singer ("Singer"), Vice-President of Wealth Management in Pennsylvania for Smith Barney.  Katz-Crank became acquainted with Singer through her representation of the Michigan Cemeteries.

**B.    The Nelms Transaction**

In 2004, Katz-Crank performed legal services for Robert Nelms ("Nelms"), who was an operator of cemetery and funeral homes in New Jersey seeking to purchase certain cemeteries and funeral homes in the states of Indiana, Michigan and Ohio (the "Nelms Transaction").  The sale was completed on or about December 22, 2004 with the assistance of approximately seven

3

different law firms, including Katz-Crank's firm. Katz-Crank provided Nelms with a legal opinion as to whether a cemetery could lawfully issue debentures in Michigan, and she was paid at her normal hourly rate and submitted bills on a monthly basis. She did not negotiate the purchase of the cemeteries by Nelms, nor did she draft the purchase agreement. Following the closing of the Nelms Transaction, which occurred at a title company in Indiana, the cemetery trust proceeds were transferred from Forethought Trust and Savings to Community. At the time of the Nelms Transaction, there was approximately $22 million in the perpetual care and merchandise trust accounts of the cemeteries. Katz-Crank had no further involvement with Nelms until approximately August 2005.

**C.      Cemetery Trust Funds Misappropriations**

In October 2005, Singer and Smart contacted Katz-Crank and requested that she attend a meeting with Community to investigate Smart's allegations that Community had mismanaged the Michigan Cemeteries' trust accounts. Ultimately, the Department of Financial Institutions for the State of Indiana concluded that Community had mismanaged the cemetery trust accounts, and required Community to divest itself of all clients with cemetery trust assets. At Smart's request, Katz-Crank located another banking institution in Michigan, Citizens Bank in Flint, Michigan ("Citizens"), to act as custodian for the Michigan Cemeteries' trust funds. Citizens agreed to act as custodian of the Michigan Cemeteries' trust funds for Smart and requested that Katz-Crank provide legal services and coordinate the accounting and auditing functions for the trusts. In December 2005, Katz-Crank formed Security Financial Management Company ("SFMC") to provide these services. SFMC entered into an agreement to act as trustee for approximately $60 million in Michigan Cemeteries' trust assets. Smart directed SFMC to use Smith Barney and financial advisor Singer to handle the investments for the trust assets.

Less than one month after SFMC was appointed trustee for the Michigan Cemeteries' trusts, Katz-Crank discovered wire information that indicated Smart had misappropriated substantial trust assets while the funds were under the control of the former trustee, Community. She immediately reported this activity to the Michigan Attorney General's office, the Michigan Cemetery Commission, the Ingham County Prosecutor, and the Tennessee Bureau of Investigation, among others. On January 22, 2006, Katz-Crank withdrew from her long-standing representation of the Michigan Cemeteries, and in February 2006 she also advised executives at Smith Barney of her concerns. Following Katz-Crank's report to the authorities, SFMC attempted to freeze all of the Michigan Cemeteries' trust funds to avoid any further illegal activity. Smith Barney, without SFMC's authorization or approval, terminated SFMC's accounts with Smith Barney and approved a transfer of the Michigan Cemeteries' trust funds to INA fsb, a trustee from the State of Delaware, where the misappropriation of the trust assets by Smart and Singer continued. Following the termination of SFMC's accounts with Smith Barney, Katz-Crank again contacted the authorities to voice her concerns that Smith Barney's actions were furthering the depletion of the Michigan Cemeteries' trust funds.

Eventually, Singer was indicted in Indiana and Tennessee, and is currently serving a sentence in Indiana for the commission of several felonies, including fraud, and is awaiting trial in the State of Tennessee for similar acts. Smart was also indicted and is currently serving a sentence in Tennessee for the commission of several felonies, including fraud. He also pled guilty to similar acts in Michigan, and pled guilty to federal charges of tax evasion. The Financial Industry and Regulatory Authority, the regulatory body responsible for the oversight and regulation of broker deals, fined Smith Barney $1.5 million for inadequately supervising Singer.

In 2007, Katz-Crank discovered that Nelms was also under investigation for misappropriation of cemetery trust assets, and she terminated his involvement with SFMC and Citizens where he had also placed cemetery trust assets. Katz-Crank contacted Haskett with the Indiana Secretary of State Securities Investigation Unit and offered to provide assistance and respond to any inquiries she may have regarding Nelms. Haskett never responded to Katz-Crank's telephone call and never requested any information from her or SFMC. Katz-Crank alleges that Haskett contacted Katz-Crank's clients and prospective clients and advised them that she was involved in illegal activity and that they should not continue to use her services.

In 2008, Nelms was charged with embezzling approximately $22 million in cemetery trust funds, pled guilty, and was sentenced to eight years' house arrest and community placement. He also agreed to testify against Katz-Crank as part of the plea bargain. Nelms also pled guilty to similar charges in Michigan, and will serve approximately eighteen months in jail.

**D.     Katz-Crank's Arrest and Prosecution**

On or about July 18, 2008,[1] Katz-Crank was arrested and charged in Marion County, Indiana with five felony counts of theft of over $100,000.00 each. She was accused of aiding and abetting Nelms with the theft of cemetery assets when she provided legal services to him in connection with the Nelms Transaction in December 2004. Following her release from the Marion County processing center, Katz-Crank alleges she was subjected to two and a half years of delay before receiving a trial by jury. She alleges that Brizzi failed to turn over portions of the grand jury transcripts as required by Marion County court rules and procedures and by court order, and failed to provide exculpatory evidence to the grand jury. On December 7, 2010, a jury

_____

[1] Katz-Crank states her arrest occurred on July 18, 2009 elsewhere in her Complaint; however, the Court presumes the 2008 date is the correct date, as she alleges she was acquitted "two and a half years later" on December 7, 2010. Dkt. 1 at 4, ¶ 10.

found Katz-Crank "innocent"[2] of all charges, and the criminal charges against her were dismissed.

Katz-Crank alleges that her wrongful arrest and prosecution by the Defendants led to loss of her liberty, her ability to pursue her profession, loss of her business, and loss of reputation in her community and profession. Specifically, the political hubris exercised by the Indiana Secretary of State and Marion County Prosecutor directly resulted in the loss of her law firm, other business interests, her savings and pension and financial losses of over $2.1 million. In addition, Katz-Crank suffered from significant mental and physical ailments including major depressive disorder, post-traumatic stress disorder, and various physical disorders.

Ironically, Katz-Crank's actions in reporting the alleged scheme to authorities in Michigan and Tennessee ultimately lead to the conviction of the individuals responsible for the thefts, and the recovery of tens of millions of cemetery trust assets.

## III.    LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations and quotations omitted). "Although this does 'not require heightened fact pleading of specifics,'

---

[2] In her complaint, Katz-Crank states that she was found "innocent", however there is no such verdict in Indiana, and the actual verdict would have been "not guilty".

it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth*, 507 F.3d at 618 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Like a motion to dismiss under Rule 12(b)(6), a 12(c) motion tests the legal sufficiency of the complaint, not the merits of the lawsuit. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Thus, a complaint need not make detailed factual allegations to survive a Rule 12(c) motion for judgment on the pleadings, but it must contain more than labels and conclusions or a formalistic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

## IV.    ANALYSIS

### A.    Choice of Law

As an initial matter, the Court must address Katz-Crank's argument that Michigan, not Indiana, substantive law applies in this case. This action was initially filed in the Western District of Michigan, and was *sua sponte* transferred to this District upon the court's finding that venue in the Western District of Michigan was improper. Dkt. 5. The Michigan district court found that venue is "undoubtedly proper" in Indiana under 28 U.S.C. § 1391(b)(1) because all the events giving rise to Katz-Crank's claims against the Defendants transpired here. *Id.* at 33 (citing 28 U.S.C. § 1391(b)(2)). Katz-Crank was indicted in Indiana by an Indiana grand jury;

she was arrested and incarcerated in Indiana; she was prosecuted in Indiana by officers of Marion County, Indiana; the allegedly false testimony against her was given in Indiana and the exculpatory evidence was allegedly withheld in Indiana; and her trial and ultimate acquittal took place in Indiana. Dkt. 5 at 3.

For the same reasons the Michigan district court found it proper to transfer this case to this District on its own motion, so too does this Court find that Indiana law is applicable in this case. Under the doctrine of *lex loci delicti*, the law of the state where the last event necessary to make an actor liable for an alleged wrong takes place governs a plaintiff's claim. *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004). Katz-Crank has not presented any evidence showing that the place of the wrongdoing bears little connection to the legal action in order to overcome this presumption. *Id.* Therefore, the Court concludes that Indiana law applies in this case.

## B. Eleventh Amendment Immunity

Defendants argue that the claims asserted against them in their official capacities as current or former state employees or officials are barred under the Eleventh Amendment. The Eleventh Amendment "specifically bars official-capacity suits against state officials because the state is the real party in interest in such suits." *Meadows v. State of Ind.*, 854 F.2d 1068, 1069 (7th Cir. 1988). The Indiana Supreme Court abolished common-law sovereign immunity in 1972, and the Indiana legislature responded with the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-3, which "established extensive immunity provisions which shield governmental units from [tort] liability." *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999). The ITCA explicitly states that it shall not be construed as a waiver of the Eleventh Amendment or consent by the State of Indiana or its employees to be sued in any federal court. I.C. § 34-13-3-5.

The Court concludes that it lacks subject matter jurisdiction over the claims asserted against all Defendants in their official capacities under the Eleventh Amendment. However, the Eleventh Amendment does not impact the claims asserted against these Defendants in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 22 (1991). Therefore, the Motion to Dismiss and Motion for Judgment on the Pleadings on the claims as asserted against Defendants in their official capacities are **GRANTED.**

## C.     Prosecutorial Absolute Immunity

Defendants Brizzi, Hutchison, and Crawford (the "Prosecutor Defendants") argue that the claims asserted against them in their individual capacities should be dismissed because they are absolutely immune from liability.

> Prosecutors . . . enjoy absolute immunity from federal tort liability . . . because of 'concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.'

*Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)). They are also immune from damages suits brought under § 1983. *Imbler*, 424 U.S. at 429. Absolute immunity applies to acts prosecutors commit within the scope of their employment as prosecutors. *Id*. (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–76 (1993)). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 272-73.

Contrary to Katz-Crank's arguments, the Court finds that the Prosecutor Defendants were each acting within the scope of their employment and within the scope of their prosecutorial duties such that absolute immunity applies. Absolute immunity applies to activities that are

"intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Katz-Crank's claims against the Prosecutor Defendants are all based upon allegations that she was wrongfully prosecuted because there was no probable cause to prosecute her, even though it is stated in different ways under her claims of malicious prosecution, abuse of process, Fourth and Fourteenth Amendment violations, and intentional infliction of emotional distress. *See* Dkt. 1 at 15, 16, 17, 18. All of these actions alleged in the Complaint involve "initiating a prosecution and presenting the state's case," for which state prosecutors are absolutely immune from suit. *Burns v. Reed*, 500 U.S. 478 (1991) (citing *Imbler*, 424 U.S. at 431). Indiana also provides immunity to prosecutors under common law and under the judicial proceedings immunity provision of the ITCA. *Sims v. Barnes*, 689 N.E.2d 734, 736 (Ind. Ct. App. 1997).

Despite Katz-Crank's argument that this conduct falls outside of the scope of the Prosecutor Defendants' employment because they allegedly acted with malice and/or for their own personal gain, these activities are still subject to absolute immunity because motive is irrelevant. "[Absolute] immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City St. Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986). Katz-Crank has not alleged in her Complaint any actions that would fall outside of those covered by absolute immunity, nor does she assert any such actions in her response to the Prosecutor Defendants' Motion to Dismiss.

Therefore, the Court concludes that the Prosecutor Defendants are absolutely immune from the claims asserted against them in their individual and official capacities. The Motion to Dismiss the claims against Brizzi, Hutchison, and Crawford is **GRANTED**.

**D.      Municipal Liability under Section 1983**

Marion County's Motion for Judgment on the Pleadings asserts that Katz-Crank's Complaint should be dismissed against it because it does not allege that Marion County maintained a custom, policy, or practice which directly caused her alleged constitutional deprivations.  Governmental units may only be subject to a claim under § 1983 if the acts of its employees are carried out pursuant to an unconstitutional custom, policy or practice.  *Monell v. New York City Dep't of Soc. Svcs.*, 436 U.S. 658, 690-91 (1978).  In order to state a claim against a governmental unit under *Monell*, the plaintiff must factually allege the existence of such a custom, policy or practice.  *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).  Katz-Crank's Complaint fails to make any such allegations.  Therefore, Marion County is entitled to judgment on the pleadings, and its Motion is **GRANTED** as to all counts asserted against it in the Complaint.

**E.      Claims Against Defendants in Their Individual Capacities**

With regard to the remaining Defendants, Haskett, Williams, Rokita, and Trathen; Katz-Crank has not adequately pleaded claims against them for malicious prosecution under either state law or § 1983.  Likewise, she has also not adequately stated causes of action under the Fourth and Fourteenth Amendments, § 1985, and § 1986.

**1.      Malicious Prosecution**

Katz-Crank asserts a claim of malicious prosecution in Court I of her Complaint; however, she does not indicate whether she is asserting this claim under state law or federal law.  In Indiana, governmental employees acting within the scope of their employment are immune from liability for losses resulting from initiation of a judicial proceeding.  I.C. § 34-13-32-3(6); *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("[T]he Indiana Tort Claims Act grants

broad immunity to Indiana government units and employees from malicious prosecution actions.").  Because the individual Defendants are all government employees and Katz-Crank fails to allege they were acting outside the scope of their employment, the ITCA bars Katz-Crank's state malicious prosecution claims against them.  Therefore, the motions to dismiss and for judgment on the pleadings are **GRANTED, but without prejudice,** as they relate to any malicious prosecution claims asserted under state law.

Generally, a claim of federal malicious prosecution is not actionable where an adequate remedy exists at state law.  *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001).  However, the Seventh Circuit recently held in *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013), that absolute immunity granted by the Indiana legislature under Ind. Code § 34-13-3-3(6) to state officers and employees acting within the scope of their employment results in the failure of Indiana law to provide an adequate remedy for malicious prosecution against those immune under Indiana law, thus a federal claim for malicious prosecution is actionable for Indiana claimants.  "[W]hen brought under federal law, the claim referred to colloquially and under state common law as 'malicious prosecution' is typically based on the deprivation of liberty without due process of law, in violation of the Fourteenth Amendment, and may seek redress through § 1983."  *Freeman v. City of Crown Point*, No. 2:13-CV-059 JD, 2014 WL 545511, at *6 (N.D. Ind. Feb. 11, 2014).  Katz-Crank must allege "something else that does amount to a constitutional violation (even if [she] calls it malicious prosecution)."  *Serino*, 735 F.3d at 594.

In Count I of her Complaint, Katz-Crank generally alleges that the Defendants were deliberately indifferent to and violated her "constitutional rights" without specifying which constitutional right she alleges was violated.  She asserts that the Defendants acted maliciously by causing charges to be brought against her which lacked probable cause; however, there is "no

such thing as a constitutional right not to be prosecuted without probable cause." *Id.* She also alleges that Defendants failed to advise the grand jury of exculpatory evidence and failed to give the grand jurors instructions as to the elements of theft under Indiana law, but this also does not amount to a constitutional violation. Because the grand jury is an accusatory body rather than an adjudicatory body, the government is not required to disclose even the existence of exculpatory evidence to the grand jury, or to provide instructions about material facts or legal terms. *United States v. Simon*, No. 3:10-CR-56RM, 2010 WL 3980310, at *11 (N.D. Ind. Oct. 8, 2010) (citing *United States v. Williams*, 504 U.S. 36, 53 (1992); *United States v. Lopez–Lopez*, 282 F.3d 1, 8–9 (1st Cir. 2002)). Therefore, these allegations do not amount to a violation of due process or any other constitutional violation.

Because Katz-Crank has failed to allege a valid constitutional violation, her claims under Count I of her Complaint fail. The Motion to Dismiss and the Motion for Judgment on the Pleadings as to any federal malicious prosecution claims asserted against Haskett, Williams, Rokita, and Trathen in their individual capacities are **GRANTED**.

### 2. Fourth and Fourteenth Amendment Claims

Katz-Crank's Complaint alleges that Defendants violated her rights under the Fourth and Fourteenth Amendments by initiating and continuing criminal prosecutions against her without probable cause. Katz-Crank argues in her response brief that she is not asserting a claim for false arrest; however, her Complaint alleges that she was "seized, arrested, and deprived of her rights under the Fourth and Fourteenth Amendments." Dkt. 1 at 17, ¶ 99. "[T]he scope of a Fourth Amendment claim is limited up until the point of arraignment; 'the interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects.'" *Wiley v. City of Chi.*, 361 F.3d 994, 998 (7th Cir. 2004) (quoting *Gauger v. Hendle*, 349 F.3d 354, 362–63 (7th

Cir. 2003)).  Because a Fourth Amendment claim would have accrued at the time of the alleged

unlawful seizure and arrest, Katz-Crank's claims brought under the Fourth Amendment are time

barred.  *Wallace v. City of Chi.*, 440 F.3d 421, 427 (7th Cir. 2006) *aff'd sub nom. Wallace v.*

*Kato*, 549 U.S. 384 (2007).  To the extent she attempts to bring a claim that she was prosecuted

without probable cause under the Fourth Amendment, she has not stated a claim.

With regard to Katz-Crank's claims brought under the Fourteenth Amendment, as stated

above, there is no constitutional right to not be prosecuted without probable cause.  "[A] plaintiff

[cannot] state a section 1983 claim simply by showing that [she] was wrongly prosecuted but

rather must establish that [she] was deprived of a specific constitutional right, such as the right to

a fair trial."  *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 683 (7th Cir. 2007).  Because

Katz-Crank has not alleged that she was deprived of a specific constitutional right, the Motion to

Dismiss and the Motion for Judgment on the Pleadings on the Fourteenth Amendment claims in

Count III of the Complaint are **GRANTED**.

### 3.    Section 1983 Conspiracy Claim

Because there is no valid constitutional violation alleged under § 1983 in Count III, there

is also no valid conspiracy claim under § 1983.  Count IV of Katz-Crank's Complaint alleges

that Defendants conspired to deprive her of her constitutional rights by wrongfully charging and

prosecuting her, but as discussed above, she has not adequately alleged constitutional violations

under the facts of the Complaint.  The Seventh Circuit has stated that "there is no constitutional

violation in conspiring to cover-up an action which does not itself violate the Constitution."

*Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (quoting *Hill v. Shobe*, 93 F.3d

418, 422 (7th Cir. 1996)).  Conspiracy cannot serve as an independent basis of liability in § 1983

actions.  *Id.* at 423.  Therefore, the Defendants' Motions are **GRANTED** on Count IV of Katz-Crank's Complaint.

### 4.    Section 1985 and 1986 Conspiracy Claims

In Counts V and VI of her Complaint, Katz-Crank alleges violations of 42 U.S.C. §§ 1985(3) and 1986.  Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law, but the conspiracy must be motivated by racial or other class-based discriminatory animus.  *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).  Section 1986 claims are derivative of § 1985, and require a showing of "(1) knowledge that any of the conspiratorial wrongs are about to be committed, (2) power to prevent or to aid in preventing the commission of those wrongs, (3) neglect to do so, where (4) the wrongful acts were committed, and (5) the wrongful acts could have been prevented by reasonable diligence."  *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).  Because Katz-Crank has not adequately alleged a deprivation of her constitutional rights under § 1983, there is no constitutional violation to support her § 1985 and § 1986 claims. *Bublitz v. Cottey*, 327 F.3d 485, 488 n.3 (7th Cir. 2003).

Katz-Crank's §§ 1985 and 1986 claims fail for the additional reason that she has not adequately alleged class-based discriminatory animus. The Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) recognized that an equal protection claim could be brought by a "class of one" where a plaintiff was intentionally treated differently from other similarly situated individuals, and there is no rational basis for the difference in treatment.  Since *Olech*, courts have struggled to articulate a concrete legal standard for adjudicating class-of-one cases.  *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013).  The uncontroversial elements of such a claim require that "[a] class-of-one plaintiff must plead and

prove that [she] was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* at 685-86 (quoting *Enquist v. Or. Dept. of Agric.*, 553 U.S. 591, 601 (2008)) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)). "[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Id.* at 686 (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)). Allegations of improper motive alone do not necessarily overcome the presumption of rationality. *Id.* The question is whether the Complaint reveals a rational basis for treating Katz-Crank differently, notwithstanding the Defendants' alleged motives. If so, Katz-Crank has pleaded herself out of court on this claim. *Id.*

The Court finds that Katz-Crank has pleaded facts that show a rational basis for the decision to investigate and prosecute her. The facts in the Complaint show that Katz-Crank provided counsel to Nelms in the Michigan, Ohio and Indiana cemetery transactions; she formed her company, served as trustee for the cemetery trust assets held by cemeteries owned by Nelms and Smart, and used Singer as the financial advisor to handle the investment of the Michigan Cemeteries' trust assets; Katz-Crank was hired to provide legal services for the trusts and coordinate the accounting and auditing functions; and ultimately Nelms, Smart and Singer were all indicted for fraud and embezzlement relating to misappropriation of the cemetery trust funds. *See* Dkt. 1 at 9-13. While Katz-Crank may not have been heavily involved in the Michigan, Ohio and Indiana cemeteries purchase by Nelms, the facts, as pleaded by Katz-Crank, show that she and her company, SFMC, were directly involved in the management, accounting, and auditing of the trust funds for cemeteries owned by both Smart and Nelms, and she used Singer as a financial advisor for both individuals.

Even viewing these facts in light most favorable to Katz-Crank, they are enough to show that her professional involvement with not one, but three individuals charged with fraud (two of which did not even share a business relationship) provided Defendants with a rational basis for deciding to investigate her, thus not adequately alleging that the Defendants had a class-based motive for their alleged actions against her. "[T]he test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiff['s] claim is a *conceivable* rational basis for the difference in treatment . *Id.* at 686-87 (emphasis in original); *see also Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). The allegations in the Complaint suggest a rational reason to investigate Katz-Crank, thus she has effectively pleaded herself out of court on both her § 1985 and § 1986 equal protection claims. *See Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) ("Section 1986 liability is derivative of Section 1985 liability . . . so that the dismissal of the Section 1985(3) claim requires dismissal of the Section 1986 claim."). Therefore, the Motion to Dismiss and Motion for Judgment on the Pleadings on Counts V and VI of the Complaint are **GRANTED**.

### 5.      Abuse of Process

A claim for abuse of process has two elements: "(1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of proceedings." *Crosson v. Berry*, 829 N.E.2d 184 (Ind. Ct. App. 2005). If the legal process has been used to accomplish an outcome that the process was designed to accomplish, liability for abuse of process cannot be established. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017 (Ind. Ct. App. 2005). "The gravamen of [abuse of process] is not the wrongfulness of the prosecution, but some extortionate

perversion of lawfully initiated process to illegitimate ends." *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997), *supplemented sub nom. Nat'l City Bank, Ind. v. Shortridge*, 691 N.E.2d 1210 (Ind. 1998) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)).

Under Indiana law, in order to prevail on an abuse of process claim the plaintiff must have some evidence tending to show that the defendant used judicial processes for an end other than that for which it was designed to accomplish. *Comfax Corp. v. N. Am. Van Lines Inc.*, 638 N.E.2d 476, 481 (Ind. Ct. App. 1994). Proof of improper motive alone is insufficient to proceed with an abuse of process claim; a plaintiff must establish that a defendant has employed an "improper 'process' before the court proceeds to an examination of the defendant's motive." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 30 (Ind. Ct. App. 1996) (internal quotations omitted). "[T]he relevant inquiry [is] whether the complained-of acts were procedurally and substantively proper under the circumstances." *Id*. at 32.

Katz-Crank has not alleged that the Defendants used the judicial process for anything other than its intended purpose. She has alleged that the Defendants carried out the process to its authorized conclusion, which was a trial at which she was found not guilty. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 31 (quoting *Groen v. Elkins*, 551 N.E.2d 876, 878-79 (Ind. Ct. App. 1990)). While she may have alleged the second element of her abuse of process claim, she has not alleged the first, which is the use of an improper process. Therefore, the Motion to Dismiss and the Motion for Judgment on the Pleadings on Katz-Crank's abuse of process claims against all Defendants are **GRANTED**.

### 6. Intentional Infliction of Emotional Distress

Similar to claims for malicious prosecution, the ITCA provides immunity for government employees for Intentional Infliction of Emotional Distress claims for actions taken within the scope of their employment. *Serino*, 735 F.3d at 595. Katz-Crank's Complaint does not allege that Defendants were acting outside the scope of their employment such that the ITCA would not apply. Her Complaint states that counsel for the Defendants advised the Defendants that they were "acting outside the scope of their *jurisdiction and authority* by contacting Plaintiff's clients . . . ." Dkt. 1 at 21-22, ¶ 121. This is not the same as acting outside the scope as one's employment, as a governmental employee may still be acting within the scope of his employment even when he acts contrary to standard departmental procedure, or even tortiously. *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind. Ct. App. 1999) (officer held to be acting within the scope of his employment even when he "blatantly disregarded" his supervisor's orders and violated standard departmental procedures). Because Katz-Crank has not alleged any of the factors found in Ind. Code § 34-13-3-5(c) that would subject a government employee to personal liability, the Court finds that the ITCA bars her claims for Intentional Infliction of Emotional Distress asserted under Count VII of her Complaint. Therefore, the Motion to Dismiss and the Motion for Judgment on the Pleadings on Katz-Crank's Intentional Infliction of Emotional Distress claims against all Defendants are **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Dkt. 23) is **GRANTED**, and the Motion for Judgment on the Pleadings (Dkt. 37) is **GRANTED**. The claims against Defendants Marion County, Carl Brizzi, Mary Hutchison, and Barbara Crawford are **DISMISSED with prejudice**. The claims against Kimberly Haskett, Charlie Williams, Todd Rokita, and Thomas

Trathen in their official capacities are **DISMISSED with prejudice**. The claims of federal malicious prosecution, violations of the Fourth and Fourteenth Amendments under § 1983, § 1983 conspiracy, § 1985(3), § 1986, and abuse of process asserted against Kimberly Haskett, Charlie Williams, Todd Rokita, and Thomas Trathen in their individual capacities are **DISMISSED with prejudice.**

The claims of state malicious prosecution and Intentional Infliction of Emotional Distress asserted against Kimberly Haskett, Charlie Williams, Todd Rokita, and Thomas Trathen in their individual capacities are **DISMISSED without prejudice** to replead within **21 days**.

**SO ORDERED.**

Date: ___03/31/2014___

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Derek S. Wilczynski
BLANCO WILCZYNSKI, PLLC
dsw@blancopc.com

Nicole L. Coroiu
BLANCO WILCZYNSKI, PLLC
nlc@blancopc.com

Orlando L. Blanco
BLANCO WILCZYNSKI, PLLC
olb@blancopc.com

R. Eric Sanders
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
eric.sanders@indy.gov

Dino L. Pollock
OFFICE OF THE INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov

David A. Arthur
OFFICE OF THE INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov