# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

December 30, 2016

To:

Laura A. Briggs
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis , IN 46204-0000

| No. 15-1809 | SHERRY KATZ-CRANK, a Michigan resident, Plaintiff - Appellant<br><br>v.<br><br>KIMBERLY HASKETT, individually and in her official capacity as an investigator for the Indiana Secretary of State, et al., Defendants - Appellees |
| --- | --- |
| **Originating Case Information:** | |
| District Court No: 1:13-cv-00159-TWP-DML<br>Southern District of Indiana, Indianapolis Division<br>District Judge Tanya Walton Pratt | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:      No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                          **Received by:**

12/30/2016

_____                   _____
                                          Deputy Clerk/ U.S.District Court

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

December 8, 2016

Before:      RICHARD A. POSNER, Circuit Judge
             KENNETH F. RIPPLE, Circuit Judge
             DIANE S. SYKES, Circuit Judge

| | |
|---|---|
| No. 15-1809 | SHERRY KATZ-CRANK, a Michigan resident, Plaintiff - Appellant<br><br>v.<br><br>KIMBERLY HASKETT, individually and in her official capacity as an investigator for the Indiana Secretary of State, et al.,<br> Defendants - Appellees |

| Originating Case Information: |
|---|
| District Court No: 1:13-cv-00159-TWP-DML<br>Southern District of Indiana, Indianapolis Division<br>District Judge Tanya Walton Pratt |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

_[signature]_
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

————————————————

No. 15-1809

SHERRY KATZ-CRANK,

*Plaintiff-Appellant*,

*v.*

KIMBERLY HASKETT,

*Defendant-Appellee*.

————————————————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00159-TWP-DML — Tanya Walton Pratt, *Judge*.

————————————————

ARGUED NOVEMBER 13, 2015 — DECIDED DECEMBER 8, 2016

————————————————

Before POSNER, RIPPLE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Sherry Katz-Crank is a Michigan lawyer with a practice in cemetery management. An unscrupulous client used her services in the course of defrauding cemetery trust funds of $22 million. When Katz-Crank discovered the fraud, she promptly contacted state regulatory authorities. The client was indicted on embezzlement

charges. Katz-Crank was charged as an aider and abettor, though a jury would ultimately acquit her.

Her reputation disgraced and her law practice in shambles, Katz-Crank sued the state and county officials who were in any way involved in the prosecution. She alleged that they conspired to violate her federal constitutional rights; she raised several state-law claims as well. The district judge entered judgment on the pleadings in the defendants' favor on some claims and dismissed others for failure to state a claim.

We affirm. Most of Katz-Crank's claims are barred by the Eleventh Amendment or prosecutorial immunity. The balance of the complaint was properly dismissed for failure to state a plausible claim for relief.

## I. Background

The case was resolved on the pleadings, so the following factual summary is from Katz-Crank's complaint. Katz-Crank is a lawyer from Michigan with a practice in the esoteric field of cemetery management. In 2004 Robert Nelms retained her to assist in his acquisition of cemeteries and funeral homes in Indiana, Michigan, and Ohio. The trust funds associated with these cemeteries were valued at about $22 million.[1] In 2007 Katz-Crank learned that Nelms was

---

[1] To provide for the perpetual maintenance of cemeteries, states customarily require cemeteries to hold a portion of their assets in trust. *See generally* IND. CODE §§ 23-14-49-1, 23-14-51-2.

No. 15-1809                                                              3

under investigation by the Indiana Secretary of State for misappropriating cemetery trust assets.

Katz-Crank promptly called Kimberly Haskett, an investigator in the Secretary of State's office, to offer her full cooperation in the investigation. Haskett did not return the call. Apparently she didn't need Katz-Crank's help; in 2008 Nelms was indicted on charges of embezzling $22 million in cemetery trust funds.[2] He pleaded guilty pursuant to a plea bargain and agreed to testify against Katz-Crank.

Although Haskett never returned Katz-Crank's call, she did find time to contact some of her clients to advise them that Katz-Crank was under criminal investigation. In July 2008 Katz-Crank was charged in Marion County with aiding and abetting Nelms's embezzlement. She was arrested that month, and both the Indiana Secretary of State and the Marion County prosecutor's office issued press releases publicizing the arrest.[3] On December 7, 2010, a jury acquitted Katz-Crank of all charges.

---

[2] Nelms was not the first of Katz-Crank's clients to embezzle cemetery trust funds. In 2004 she represented Clayton Smart during his purchases of Michigan cemeteries valued at $45 million. Katz-Crank later discovered that Smart had misappropriated trust funds and reported the theft to the authorities. Smart was convicted of fraud.

[3] For example, the press release posted on the Indiana Secretary of State's website stated as follows: "Crime can be violent, or can be executed using white-collar weapons like a pen, a briefcase, or in [Katz-Crank's] case, a cemetery plot. Our office will continue to work effectively with other parts of government, like [Marion County Prosecutor] Carl's office, to ensure we get results … ." Press Release, Ind. Sec'y of State, Secretary

Exactly two years later Katz-Crank filed suit in federal court against Marion County and multiple state and county officials who were directly or indirectly involved in the criminal investigation and prosecution. The state defendants are former Indiana Secretary of State Todd Rokita, Haskett, and Charlie Williams, another investigator in the Secretary of State's office. The county defendants are former Marion County Prosecutor Carl Brizzi, former Deputy Prosecutor Mary Hutchinson, former Deputy Prosecutor Barbara Crawford, Investigator Thomas Trathen, and Marion County itself.

The number of claims is no less multitudinous. Katz-Crank brought federal claims under 42 U.S.C. § 1983 for malicious prosecution, "abuse of process," and violation of the Fourth and Fourteenth Amendments; three federal conspiracy claims (one each under § 1983 and 42 U.S.C. §§ 1985(3) and 1986); and state-law claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The defendants were sued in their official and individual capacities.

The defendants moved variously for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure and for dismissal under Rule 12(b)(6) for failure to state a claim. The judge entered judgment on the pleadings in the defendants' favor on some of the federal claims,

---

Rokita Applauds Grand Jury Indictments in Cemetery Fraud Case (July 15, 2008) (on file with author), http://www.in.gov/sos/securities/2854.htm (last visited Dec. 8, 2016).

No. 15-1809                                                                5

dismissed others with prejudice under Rule 12(b)(6), and dismissed the state-law claims with leave to replead. Katz-Crank filed an amended complaint limited to the state-law claims. It too was dismissed for failure to state a claim, this time with prejudice. This appeal followed.

## II. Discussion

Our review is de novo. *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015). We don't need to parse which of Katz-Crank's claims were resolved under Rule 12(c) and which were resolved under Rule 12(b)(6); "[a] motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). To survive a Rule 12(b)(6) motion, the complaint must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We accept the allegations in the complaint as true unless they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### A. Federal Claims

#### 1. *Claims Against the State and County*

We begin with the federal claims against Marion County and against the state and county officials in their official capacities, which are the equivalent of claims against the state and county. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) (state officials); *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (county officials). These claims can be quickly dispatched.

6                                                           No. 15-1809

The Eleven Amendment bars suit in federal court against nonconsenting states absent some specific types of congressional authorization not applicable here.[4] *See Pennhurst*, 465 U.S. at 101–02; *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). Accordingly, all claims against the state officials in their official capacities were properly dismissed on Eleventh Amendment grounds.

Marion County is a "person" under § 1983 and may be held liable for violating Katz-Crank's federal rights if its policies or customs caused the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The complaint alleges lots of *individual* misconduct by county officials, but it nowhere identifies any county policy or custom that caused Katz-Crank's injury. Katz-Crank's brief does not fill the gap. That dooms the claims against the County itself (and by extension, the claims against the county officials in their official capacities). *See id.* at 694; *see also Grieveson*, 538 F.3d at 771.

## 2. *Claims Against the Marion County Prosecutors*

Katz-Crank also brings several federal claims against three Marion County prosecutors in their individual capacities. Prosecutors are protected by robust immunity from federal tort liability, "whether common law or constitutional, … for acts they commit within the scope of their em-

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

ployment as prosecutors." *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014) (citations omitted). Katz-Crank's federal claims against the prosecutors implicate conduct within the scope of this broad immunity.

Katz-Crank alleges that the prosecutors (1) indicted her without probable cause; (2) made false and inflammatory public statements in press releases; (3) acted "maliciously"; (4) refused to consider exonerating evidence she tried to give them; (5) presented false evidence to the grand jury; and (6) delayed her trial. Most of these allegations encompass prosecutorial acts or omissions for which the Marion County prosecutors enjoy absolute immunity. *See Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016) (explaining that absolute immunity covers "what goes on in the courtroom" and grand-jury proceedings); *id.* ("[I]t's clear that absolute immunity knocks … the [plaintiff's] claims premised on allegations that [the prosecutor] presented false statements to the grand jury and at trial.").

The only close call is the allegation about false and inflammatory public statements in press releases, which arguably falls outside the immunity shield. The Supreme Court has held that a prosecutor's "statements to the media are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993). But a close reading of the complaint reveals that this allegation—made only very generally, without identifying any particular false statement—appears in the complaint's description of the means by which the defendants conspired to deprive Katz-Crank of her federal rights in violation of § 1983. As we'll explain in a moment, the § 1983 conspiracy claim fails because the complaint doesn't state a claim for any underlying constitutional

tort. So even if this particular allegation doesn't fall within
the scope of prosecutorial immunity, it does not support a
cognizable federal claim for relief.

### 3. *Claims Against the State Officials and Investigators*

The state officials and the county investigators do not en-
joy absolute immunity from suit in their individual capaci-
ties, so we turn now to the substance of the federal claims
against them. Katz-Crank brings claims under § 1983 for
malicious prosecution, abuse of process, and a violation of
the Fourth and Fourteenth Amendments. The complaint
doesn't identify any constitutional basis for the first two
claims, and Katz-Crank's brief doesn't either. Indeed, her
brief doesn't address the substance of these claims at all; she
focuses instead on the scope of the defendants' immunity
under the Indiana Tort Claims Act.

We're not inclined to construct a constitutional basis for
Katz-Crank's claims when she has failed to do so herself. In
the interest of completeness, however, we note that the
Fourth Amendment claim doesn't appear to be one for false
arrest; that claim would be time-barred in any event. *See
Wallace v. Kato*, 549 U.S. 384, 391 (2007) (explaining that the
limitations period for a Fourth Amendment claim for arrest
without probable cause begins to run when the detainee
appears before a magistrate). Rather, the Fourth Amendment
claim appears to be simply a repackaged claim for malicious
prosecution.

Our circuit doesn't permit this maneuver; we've held that
a federal claim for malicious prosecution implicates (or at
most *may* implicate) the right to due process, not the Fourth
Amendment, and that no federal malicious-prosecution

No. 15-1809                                                          9

claim is available if state law provides a similar cause of action. *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001).[5] Indiana does provide a remedy for malicious prosecution, but the Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment. IND. CODE § 34-13-3-3(6); *see also Serino v. Hensley*, 735 F.3d 588, 593–95 (7th Cir. 2013) (recognizing that the Indiana Tort Claims Act grants broad immunity to governmental employees from suit for malicious prosecution and intentional infliction of emotional distress). We've held that this statutory immunity effectively blocks a common-law claim of malicious prosecution against governmental officers in Indiana, and this in turn "opens the door to federal malicious prosecution suits against such officers." *Julian v. Hanna*, 732 F.3d 842, 848 (7th Cir. 2013); *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015).

As we've noted, however, Katz-Crank hasn't made this argument because she hasn't bothered to identify the basis of her federal claims (other than pointing very generally to the Fourth and Fourteenth Amendments). Nor has she made any effort to explain how the allegations in her complaint suffice to state a federal malicious-prosecution claim. Our own review convinces us that they do not.

---

[5] A case now before the Supreme Court may change that rule, *see Manuel v. City of Joliet*, No. 14-9496 (oral argument held Oct. 5, 2016), but as it stands now, a Fourth Amendment claim for malicious prosecution is unavailable in this circuit.

10                                                    No. 15-1809

We've held that a federal malicious-prosecution claim (if one is available at all) borrows the elements of the state tort. *See Hart*, 798 F.3d at 593. The law of malicious prosecution in Indiana requires the plaintiff to prove the following elements: (1) the defendant "instituted or caused to be instituted an action against the plaintiff"; (2) the defendant acted with malice and (3) without probable cause; and (4) the action "was terminated in the plaintiff's favor." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001).

Katz-Crank's claim fails on the first of these requirements. She hasn't alleged that the former Secretary of State or any of the investigators—state or county—either instituted the prosecution against her or caused it to be instituted. She has not alleged, for example, that these defendants plied the prosecutors with evidence they knew to be false or otherwise duped the prosecutors to indict her without probable cause. *See Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013) (explaining that under Indiana law a malicious-prosecution claim can be made against a defendant who did not himself initiate the prosecution when the prosecution is initiated solely based on information provided by the defendant); *Bah v. Mac's Convenience Stores*, 37 N.E.3d 539, 547 (Ind. Ct. App. 2015) (holding that a claim for malicious prosecution is not available when a prosecutor makes "an independent determination of whether to pursue criminal charges"). Accordingly, Katz-Crank failed to state a

No. 15-1809                                                                 11

federal claim of malicious prosecution against the state
officials and the county investigator.[6]

To the extent that Katz-Crank's § 1983 claim could be
construed as an equal-protection claim, it likewise fails. The
only conceivable way to conceptualize such a claim in the
context of this case is under a "class of one" theory. *See
Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). But a
class-of-one claim cannot be used to challenge *discretionary*
governmental action, like the decision to initiate prosecution.
*See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008);
*Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) ("[C]lass-of-
one claims cannot rest on governmental activity that is
discretionary by design, a good description of prosecutorial
selectivity in criminal law.") (citation omitted). Even if a
class-of-one claim were available, Katz-Crank hasn't alleged
that she was treated differently than others similarly situat-
ed, an essential element of the claim. *See United States v.
Moore*, 543 F.3d 891, 896–97 (7th Cir. 2008) (explaining the
"similarly situated" requirement).

Finally, we return now to the allegation that some of the
defendants gratuitously inflicted reputational harm on Katz-
Crank. As we've noted, the complaint alleges that Investiga-
tor Haskett contacted Katz-Crank's clients and advised them
that she was under criminal investigation. It also alleges that
the former Secretary of State and the Marion County prose-
cutor's office issued inflammatory press releases announcing

---

[6] The federal abuse-of-process claim is also a repackaged claim for
malicious prosecution, so we do not need to separately address it.

her arrest. These allegations may form the basis of an action-
able defamation claim, but Katz-Crank has made no effort to
fit them within any recognized constitutional doctrine.

The Due Process Clause is not "a font of tort law to be
superimposed upon whatever systems may already be
administered by the States." *Paul v. Davis*, 424 U.S. 693, 701
(1976). Katz-Crank has not alleged that the defendants
altered her legal status in some way, or impaired her em-
ployment prospects with the government, or deprived her of
a right she once held, or revoked a license "recognized and
protected by state law." *See id.* at 704–05 (legal status); *id.* at
705–06, 709–10 (governmental employment); *id.* at 707 (right
once held); *id.* at 710–11 (license). She alleges only that they
damaged her reputation. But "reputation alone, apart from
some more tangible interests," is neither liberty nor property
"by itself sufficient to invoke the procedural protection of
the Due Process Clause." *Id.* at 701; *id.* at 712 ("[P]etitioners'
defamatory publications, however seriously they may have
harmed respondent's reputation, did not deprive him of any
'liberty' or 'property' interests protected by the Due Process
Clause.").

Not much more is needed to resolve the remaining fed-
eral claims. Without a viable federal constitutional claim, the
conspiracy claim under § 1983 necessarily fails; there is no
independent cause of action for § 1983 conspiracy. *Cefalu v.
Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). The
§ 1985(3) claim lacks allegations of racial or class-based
discriminatory animus, a required element. *Smith v. Gomez*,
550 F.3d 613, 617 (7th Cir. 2008) ("Section 1985(3) prohibits a
conspiracy to deprive another of equal protection under the
law … , but the conspiracy must be motivated by racial[] or

No. 15-1809                                                      13

other class-based discriminatory animus."). The failure of
the § 1985 claims also defeats the § 1986 claim. *See id.*

**B. State-Law Claims**

What remains are the state-law claims, which the judge
dismissed on the merits after giving Katz-Crank an oppor-
tunity to replead. Katz-Crank argues that the judge was
wrong to apply Indiana law; she insists that Michigan law
applies instead. Not so. Indiana's choice-of-law rules apply,
*see Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941),
and Indiana looks to the location of "the last event necessary
to make [the defendants] liable for the alleged wrong" and
then examines "whether the place of the tort" is sufficiently
connected to the legal action. *Simon v. United States*,
805 N.E.2d 798, 805–06 (Ind. 2004) (quotation marks omit-
ted). The course of conduct alleged here—the investigation,
indictment and trial—occurred in Indiana. And it cannot
seriously be argued that Indiana has only a tenuous connec-
tion to an alleged wrongful prosecution that took place in
the Hoosier state. Indiana law applies.

The merits require only summary attention. The Eleventh
Amendment prevents us from adjudicating the state-law
claims against the state officials in their official capacity.
*Pennhurst*, 465 U.S. at 121 ("[A] claim that state officials
violated state law in carrying out their official responsibili-
ties is a claim against the State that is protected by the
Eleventh Amendment."). The state-law claims against the
defendants in their individual capacities are barred by
Indiana's statutory immunity. The Indiana Tort Claims Act
provides that a "governmental entity or an employee acting
within the scope of the employee's employment is not liable
if a loss results from … [t]he initiation of a judicial or an

administrative proceeding." IND. CODE § 34-13-3-3(6); *id.*
§ 34-6-2-38(a) (defining "employee" as a person acting on
behalf of a governmental entity, including elected officials);
*id.* § 34-6-2-49(a) (defining "governmental entity" as the state
and any political subdivisions).

The Indiana Supreme Court interprets "scope of em-
ployment" broadly enough to encompass all of the allega-
tions here. Specifically, the term includes any conduct "of
the same general nature as that authorized" by the public
employer, conduct "incidental to the conduct authorized" by
the employer, and conduct done "to an appreciable extent[]
to further [the] employer's business." *Bushong v. Williamson*,
790 N.E.2d 467, 473 (Ind. 2003) (quotation marks omitted).
All of the conduct alleged here falls comfortably within the
state immunity bar. The state-law claims were properly
dismissed.

AFFIRMED.

POSNER, *Circuit Judge*, concurring and dissenting. I disagree with the majority only in regard to its dismissal of the count of the complaint in which the plaintiff alleges that some of the defendants, notably investigator Haskett, acted outside the scope of their prosecutorial duties "with deliberate indifference to Plaintiff's constitutional rights." Now it's true that the pleading is clumsy; the count is captioned "Malicious Prosecution Pursuant to Indiana's Tort Claims Act," a theory of liability that as explained in the majority opinion has no possible merit and no possible relevance to the plaintiff's federal claims. But two of the specific allegations that follow the caption state a claim for relief under 42 U.S.C. § 1983, which so far as relates to this case provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Typically the statute is invoked as a means of enforcing the due process clause of the Fourteenth Amendment.

The allegations that seem to me to state a constitutional claim are that "Defendants assisted or caused to be published statements in the press and on websites and blogs containing information regarding Plaintiff's alleged criminal activity which they knew was false, inaccurate and incomplete and with the intent of harming Plaintiff to Defendants['] benefit," and also that the defendants "contacted Plaintiff's business clients that had no connection to this

matter and advised that she was involved in criminal activity and they should no longer do business with her."

The defendants state that "to the extent Appellant may have feared that the press statements would inflame the public against her, a jury found her not guilty, meaning there was no harm from the statements and therefore no violation of her constitutional rights from the statements." But the plaintiff is not complaining about the effect of the statements *on the jury*—how could she, given her acquittal?—but about their effect on her livelihood as a practicing lawyer.

In its only reference to the plaintiff's complaint about efforts by members of the prosecutorial team to turn her clients against her, the defendants' brief acknowledges that Kim Haskett "contacted Appellant's clients and told them that Appellant was involved in illegal activity. Whether these matters were negligent or malicious, they were conducted in the course of Haskett's role as investigator of securities violations and not in any other capacity." That's no defense. The absolute prosecutorial immunity here invoked by the defendants does not extend to investigators, such as Haskett—even prosecutors lose their absolute prosecutorial immunity when they engage in investigations. *Fields v. Wharrie*, 740 F.3d 1107, 1112–13 (7th Cir. 2014).

No matter, the majority opinion states, for all that the plaintiff is alleging (in regard to "efforts by members of the prosecutorial team to turn her clients against her") is defamation, and as to that the opinion states that "the Due Process Clause is not 'a font of tort law to be superimposed upon whatever systems may already be administered by the States,'" quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976). Judge Sykes's opinion, further quoting *Paul v. Davis*, goes on to say

No. 15-1809                                                    17

that "Katz-Crank has not alleged that the defendants altered her legal status in some way, or impaired her employment prospects with the government, or deprived her of a right she once held, or revoked a license 'recognized and protected by state law.' *See id.* at 704–05 (legal status); *id.* at 705–06, 709–10 (government employment); *id.* at 707 (right once held); *id.* at 710–11 (license). She alleges only that they damaged her reputation. But 'reputation alone, apart from some more tangible interests,' is neither liberty nor property 'by itself sufficient to invoke the procedural protection of the Due Process Clause.' *Id.* at 701; *id.* at 712 ('[P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.')."

The majority opinion's reliance on *Paul v. Davis*, while natural since it's the leading case dealing with an allegation of defamation in a section 1983 suit, misconceives the Supreme Court's opinion. The key passages in the opinion are, first, that "The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, *apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.*" *Id*. at 701, emphasis added. The second key passage is that "it is to be noted that this is not a case where govern-

ment action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other *employment opportunity*." *Id*. at 705, quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961), emphasis added.

The wrinkle in this case is that the plaintiff is self-employed. Were she employed and lost her job, then according to *Paul v. Davis* the loss might count as a deprivation of property in violation of the Fourteenth Amendment and thus of 42 U.S.C. § 1983. But to be self-employed, and lose one's self-employment (or a great deal of it) by being defamed, is the equivalent of being fired or suffering a drastic reduction in pay. I therefore interpret *Paul v. Davis* to entitle the plaintiff in this case to prove if she can that the defamatory conduct of Haskett and other defendants inflicted a harm on her comparable to the harm she would have suffered had she been employed and lost her employment as a result of lies about her spread by the defendants.

It's true that in a subsequent Rehnquist opinion, *Siegert v. Gilley*, 500 U.S. 226 (1991), further illustrating his fiercely protective attitude, not readily derivable from the Constitution, toward states' rights, he seemed to step back from the proposition announced in *Paul v. Davis* that loss of employment (and here I add, loss of self-employment) caused by defamation is actionable under federal law. But he didn't say the Court was overruling *Paul v. Davis*, which remains the leading case on harm, actionable in federal courts under federal law, caused by defamation. We must choose between the two decisions, and I choose *Paul* as the more intelligent and civilized decision. The Court did express concern lest "every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' estab-

No. 15-1809                                                    19

lish[] a violation of the Fourteenth Amendment." *Paul v. Davis, supra*, 424 U.S. at 699. But it did not say that no injury caused by defamation is ever actionable under the amendment.

We should reverse the dismissal of the defamation claim insofar as it alleges a drastic reduction in the plaintiff's legal business as a consequence of the misconduct by the defendants, and remand for a trial.

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit